M. S. GRINBAUM & CO. *vs.* HEEIA SUGAR PLANTATION
COMPANY *et al.*

IN RE CLAIM OF J. FOWLER & CO.

APPEAL FROM THE CHANCELLOR.

JULY TERM, 1885.

JUDD, C. J.; MCCULLY and PRESTON, JJ.

Fowler & Co. sold rails, cars, and appurtenances for a railway, to the
Heeia Plantation, and the railway was operated by the plantation
for over a year; a mortgage of the plantation, including railway,
cars and appurtenances, to Grinbaum & Co. having been fore-
closed, Fowler & Co. claimed the right to remove the track and
cars, on the plea that the sale was conditional; held that the sale
was absolute, and that the railway and its appurtenances was
covered by the mortgage.

Decree of the Chancellor Reversed.

OPINION OF THE COURT, BY PRESTON J.

The bill in this case was filed on July 3, 1884, and sets forth :

That on the 16th of August, 1883, the Heeia Sugar Plantation
Co., a corporation established under the laws of the State of Cali-
fornia and doing business at Koolau, Island of Oahu, one of the
defendants, executed and delivered to the plaintiffs a mortgage
deed of all the property belonging to and forming said Heeia
Sugar Plantation, and all other property that might thereafter be
added to and constitute and form said plantation, to secure the
repayment of $60,000 in three years from the date thereof, with
interest at nine per cent per annum, payable semi-annually, being
for money advanced by said plaintiffs for the purpose of continu-
ing and carrying on said plantation, and that $60,000 and more
had been advanced and were then owing to plaintiffs from said
Heeia Sugar Plantation Co. under said mortgage :

That $2,600 due to the plaintiffs for six months' interest on said
mortgage on the 16th February, 1884, had not been paid :

That said mortgage was executed and purported to be subject
to three mortgages, first from J. McKeague and Alexander Ken-

nedy to H. Hackfeld & Co., dated September 30, 1879, and by H. Hackfeld & Co. assigned to P. Isenberg, and by him assigned to the defendant, C. M. Cooke; second, a mortgage from said McKeague and Kennedy to the defendants H. Macfarlane & Co.; third, a mortgage from McKeague to said Kennedy:

That said mortgage from McKeague to Kennedy was collusive and fraudulent and void for want of consideration, intended and calculated to defraud subsequent creditors advancing moneys for carrying on said plantation, and ought not to stand as a valid security against the mortgage of the plaintiffs:

That at the date of the execution of said mortgage by said McKeague and Kennedy to H. Macfarlane & Co., said McKeague and Kennedy were partners and plaintiffs were ignorant whether said partnership had been dissolved, and avers in substance that Kennedy is absent and that one S. M. Damon was his attorney in fact:

That said mortgage from McKeague and Kennedy to H. Macfarlane & Co. was made to secure the debt due from McKeague and Kennedy to said Macfarlane & Co., and for moneys advanced to them, and the plaintiffs submit that said mortgage was a valid security only for the moneys advanced by said H. Macfarlane & Co. to said McKeague and Kennedy.

The bill contains further allegations respecting a lease comprised in the mortgage to H. Macfarlane & Co. not necessary to be repeated here, and prays for an account to be taken of amount due to plaintiffs and decree for payment: That on default, equity of redemption be foreclosed : That all said outstanding mortgages be marshalled and an account taken of what is due upon each : That the mortgage from McKeague to Kennedy be declared fraudulent and void against plaintiffs: That said mortgage to H. Macfarlane & Co. is a valid security only to the extent of the moneys advanced by said H. Macfarlane & Co. to said McKeague and Kennedy: And for general relief.

The bill was amended by making G. W. Macfarlane & Co. defendants, to whom the mortgage to H. Macfarlane & Co. had been transferred, and also J. McKeague.

A receiver had been appointed in other proceedings.

The defendants, G. W. Macfarlane & Co., Kennedy and Cooke

answered, and the bill was taken *pro confesso* as against the Heeia Sugar Plantation Co.

The case came on for hearing before the Chancellor, on 12th and 13th December, 1884, who on the 25th March, 1885, made his decree whereby he directed that the mortgage to the plaintiffs, and the several mortgages to H. Hackfeld & Co. and H. Macfarlane & Co., be foreclosed, and all the property described in the three several mortgages be sold at public auction, free from incumbrances, and the proceeds applied first in repayment of the amount found to be due upon an accounting before the master, upon the mortgage to H. Hackfeld & Co.; second, to the repayment of the amount found to be due on a like accounting, upon the mortgage to H. Macfarlane & Co.; third, to the repayment of the amount found to be due upon the mortgage to the plaintiffs; fourth, the balance, if any, to be paid into Court to await the Court's disposition of same : That said mortgage to H. Macfarlane & Co. be a security up to $40,000 and interest, and that the mortgage to Kennedy and notes given therewith were void and of no effect.

The plaintiffs and defendant Kennedy appealed, and the decree was sustained by the Court sitting in banco at the last April Term. See *ante*, pages 397, 405.

The mortgage to plaintiffs comprised "all railways, railway locomotives, tracks, cars and trucks, now or hereafter belonging to or forming a part of said Heeia Sugar Plantation."

On the 23d April, 1885, a petition was filed on behalf of Robert Fowler, David Greig and Bernard Fowler, of Leeds, England, copartners in business, under the firm name of John Fowler & Co., stating :

That they were the owners of certain rails, tracks, portable railroad, cars, rolling stock and other railroad appurtenances, then situated and being upon the Heeia Plantation according to a description thereof filed therewith :

That said railroad cars and appurtenances were then in the possession of the Receiver appointed by the Court in the said suit and then and now pending :

That said railroad was originally ordered by said McKeague when he was the manager and part owner of the said plantation ;

that before the arrival of said railroad said McKeague sold said plantation to the Heeia Sugar Plantation Company; that all of the property set forth in said schedule (except a certain amount of track not delivered) was delivered to said Heeia Sugar Plantation Company between the month of November, 1882, and October, 1883, upon the special agreement and contract that the title to said railroad should not pass to said Plantation Company until the same was paid for, but that the title to the same should remain in petitioners; that in pursuance of said agreement said Plantation Company, on the 20th November, 1882, paid to petitioners $6,000 and failed to pay any more on account of said railroad, and petitioners in consequence of said failure refused to deliver a certain portion of said railroad—to wit, about one-half a mile of portable track—and then held possession of the same; that said plaintiffs (Grinbaum & Co.) well knew the above facts at the time of taking their mortgage and promised to pay for said railroad if the same were allowed to remain on said premises; that neither said Grinbaum & Co., nor said Heeia Sugar Plantation Company have paid for said railroad, and the receiver appointed by the Court had refused to allow petitioners to remove the same. And petitioners prayed for an order allowing them to enter upon said Heeia Plantation and to remove so much of the railroad, etc., as had not been paid for.

Mr. Oscar Unna, the receiver, filed an answer and opposed the granting the prayer of the petition:

1st. Because the railway and other property claimed were fixtures affixed to the soil and thereby vested in and formed part of the security of said several mortgages:

2d. Because said several mortgagees other than said Grinbaum & Co. are not shown in the petition to have known or acquiesced in any of the alleged agreements mentioned, and therefore are not affected or bound thereby: and

3d. Because if said Grinbaum & Co. had no claim to said railroad property under the averments in said motion, they had the right to insist that said other mortgagees should exhaust their security against the same.

The petition came on for hearing before the Chancellor on the 20th and 21st May, 1885, who, after hearing the evidence, found

that on the facts and the law the petitioners were entitled to the relief prayed, and a decree was signed, whereby " it is ordered, adjudged and decreed. that said John Fowler & Co. may at any time enter said Heeia Plantation and may remove all of the railroad track, cars, material and appurtenances there situated, according to the schedule annexed to said motion, except six thousand twenty-one thousand two hundred and fifty-sevenths thereof ($\frac{6021200}{21257}$) to be designated by appraisers thereby appointed."

From this decree the receiver and Grinbaum & Co. appeal, which appeal came on and was argued at the present term.

*F. M. Hatch*, for petitioners.

The sale was a conditional sale, no property passed.

" When by agreement of parties the property does not vest in purchaser until the purchase money is paid, the vendor may, if money is not paid, recover the property from the vendee or from one who holds it under a mortgage or sale from him." *Benner vs. Puffer*, 114 Mass., 376, *Coggill vs. Hartford and N. H. R. R.*, 3 Gray, 545, *Zuchtmann vs. Roberts*, 109 Mass., 53, and cited many other cases and authorities to the same effect, and contended that the evidence fully supported the decree.

*A. S. Hartwell*, for the Receiver and Grinbaum & Co.

The burden of proof of the alleged contract is on petitioners. We question the contract. The transaction as alleged is a mortgage, not a sale. (*Fosdick vs. Car Company*, 99 U. S. 256.) Such a contract is contrary to good policy. We do not ask that *Raymond & Wilshire vs. Dole & Wilcox*, 4 Hawn., 232, be reconsidered, but it should be confined to exact cases. We do not deny authority of cases so far as they go. This was not a bailment, because there was part payment; condition, if any, was waived. Waiver is an act done or allowed not to be done to the prejudice of another. There is no sufficient evidence to support claim as to property in railroad, etc., being in vendee and mortgagee. *Newhall vs. Kingsbury*, 131 Mass., 445.

In this case we have to consider, first, what is the law governing the case ? Second, whether the evidence before the Court is sufficient to satisfy us that the sale was a conditional one, as alleged.

As to the law, this Court has, in the case of *Raymond & Wil-*

*shire vs. Dole, Assignee,* adopted the principle contended for by the petitioners, and without saying that we should go as far as some of the cases cited for the petitioners, we should feel bound if the evidence were direct and unequivocal to support the alleged contract, but such evidence should be positive and certain in its details as to the terms and stipulations of such contract.

The learned Chancellor had the advantage of hearing the evidence and of seeing the witnesses. We have only the written testimony before us, which has perhaps lost some of its effect in transcribing, and feel bound to give full effect to and support the finding of the learned judge, if we can satisfy our minds that the evidence is such as to leave even a favorable doubt upon the effect of such testimony.

Neisser says he was business manager from October, 1882. "The cars and railroad tracks were ordered by McKeague, through Macfarlane & Co. McKeague told me so. No railroads on the place when I went there. Delay in delivering tracks. The railroad was to be delivered in time for the crop of 1882–3 and the railroad was to be considered as the property of Fowler & Co. until paid. The railroad was not put into general plantation account. The understanding was that the railroad was to be paid for after it was finished and delivered. There was no written agreement about it and no definite time set for payment. No term of credit agreed upon that I know of." On cross-examination the witness said : "I was in San Francisco at the time the locomotive was taken to the plantation. It must have come over in October or November. I don't know that McKeague made the bargain for railroad. I did not order it nor did the Heeia Company. During the delivery of the railroad material at Heeia Macfarlane was there and said to me : 'You know, Mr. Neisser, that the railroad shall remain as the property of Fowler & Co. till paid.' I told him I was aware of that arrangement between McKeague and him. I did not inform Grinbaum & Co. of this nor that it was not paid for. The arrangement for the continued ownership of the railroad by Fowler was made by McKeague in the first place and afterward by me. McKeague did not tell me of the arrangement. I can't remember exactly who told me. Can't remember when the talk was with Macfarlane. Delivery of railroad iron

commenced in October or November, 1882, and is not completed yet. (September, 1884.) I think it was after we bought that I heard of the arrangement." (The purchase was 30th June, 1882.)

Henry R. Macfarlane says : " Our firm are agents for J. Fowler & Co.—were so in 1882–3, when order for railroad was given. R. H. Fowler of J. Fowler & Co. was here in Honolulu. McKeague wanted a railroad ; he talked with Fowler about it before place was incorporated, before transactions with Neisser. It was about a year before the road was delivered, some time before that —from six months to a year—(delivery commenced October, 1882.) McKeague wanted railroad—was not quite certain whether it would work among hills. Fowler said their tramway would work there ; would guarantee it to work if their engineer constructed road. He was anxious to have a road there because planters from other islands could go there easily and see how it worked. Understanding was that he would guarantee the road—payments were to be made easy—the understanding was that the road was to be Fowler's until it was paid for. They had a lot of railroad stock here. As soon as crop was off the road was to be laid—cars and locomotive to be sent out afterward. It was mostly a permanent track. They got portable tracks afterward—it's all in the bill. We were agents for McKeague plantation at the time. First delivery was about latter part of 1882. This is a correct account of what was sent over. Neisser was in charge of plantation ; told him I would like something on account. I suppose he understood the road was to be Fowler's until paid for. I asked him and he said he understood it so. He gave me $6,000 on account. I suppose if it hadn't worked it would have been Fowler's loss. There would have been trouble in settlement. The railroad has not all been delivered—the agency was changed. We thought we ought to have more payment, so we held on to locomotives, rails and cars. The locomotive has since been delivered to Grinbaum & Co. and paid for by them. We didn't deliver it because we hadn't got the payments as promised." On cross-examination he says : " The conversation with Neisser about road being Fowler's until paid for was here in town, before we began to deliver. He promised he would pay along as crop came in. Neisser promised this. McKeague made no agreement as to time and manner

of payment. Agency was transferred 22d August, 1883. All my agreements about railroad were made with Neisser. He reiterated McKeague's order—it was along in 1882, shortly after the affair was turned over to the corporation; we talked it over before he went to California. The arrangement with Neisser was that road should be Fowler's till paid for and Neisser should do the best he could with the crop. Most of the railroad business was verbal between Fowler and McKeague, Neisser and myself. I did not appropriate part of the $47,000 to pay for railroad, because they—*i. e.*, Frank and Neisser—wanted us to be easy about it; it would be settled after the crop came off. As the railroad was ours, and as Grinbaum & Co. were making advances, that was the best they could do. I went to Heeia with Fowler and McKeague. Fowler said he would guarantee road if his engineer built it."

Captain John Ross says: "Have been manager of Heeia Plantation from November, 1882, till February 1, 1884. Neisser employed me—objected to Neisser as to direction of line. He answered I must get along as best I could as road was laid out by Fowler & Co.'s engineer and was to be in their hands until tested and paid for. Was present at conversation between Neisser and Henry Macfarlane. I heard if the road was not a success it was to revert to Fowler & Co.—remember once distinctly—may have been more."

G. W. Macfarlane—"Can't recollect exact date of my first conversation about the railroad. It was before I went to England— in 1882, I think. There was more or less talk between McKeague and my brother Henry; he attended to Heeia matters. There was an arrangement between Fowler and Neisser about putting a railroad on Heeia plantation. They were to guarantee working of road. It was to be done at Fowler & Co.'s risk. If not satisfactory it was to be thrown back on their hands. It was arranged between Henry Fowler and myself, in England, that the matter of putting road down, payments, etc., were to be left to my brother Henry and Neisser. It was agreed that road was to be put down by Fowler's engineer, expense of engineer to be paid partly by Fowler and part by plantation, and after road was paid for it was

52

to pass over to the plantation. This arrangement was arrived at because we could not undertake to guarantee the account. As agents of the plantation our advances were sufficiently large. We did not care to take an extra burden, and we had not means then at our command to make advances for this purpose. Fowler who was out here and his uncle in London agreed to this arrangement. At time of transfer Frank and Selig came in the office and notified us they were ready to take up balance of account. He had arranged with Henry that railroad was to be an outside matter to be paid for out of crop, and that they were to have a year's time on the mortgage. Selig was standing there with Frank." Cross-examined. "The mortgage was for all plantation property. We could not include railway, because it belonged to Fowler & Co. ; we could not take mortgage for railroad, because it had not passed to Heeia Plantation.

(Mortgage is dated 2d July, 1881.)

On this evidence can it be said that the alleged contract is proven.

To say the least, according to the evidence of the two Macfarlanes, it was a very loose and unbusiness-like transaction. The contract involved property to the amount of nearly thirty thousand dollars and could not have been completed within a year. Yet nothing in writing passed between the parties. According to the evidence on behalf of the claimants, the railroad was to be taken back if not a success.

Neisser's evidence should be looked at with great caution. Grinbaum & Co. had commenced proceedings for foreclosure, a receiver had been appointed and Neisser was ousted from the management, and he does not fix any definite dates and cannot remember from whom he first heard that the property was to remain Fowler's until paid for.

Henry Macfarlane says that the matter was first spoken of about a year before delivery commenced, or about six or eight months before incorporation. Now the conveyance from McKeague to Neisser was on the 30th June, 1882, so that it would appear that this time is about correct, as delivery commenced in October, 1882.

G. W. Macfarlane's testimony is important if correct. But we

think he is mistaken, because he says that the conversation with Neisser was just before he left for England in 1882 ; he does not fix the time, but from inquiries made and from official sources within reach, it is ascertained that he left on the 26th September ; Neisser left with McKeague on about the first of July. McKeague returned on the 4th September, and Neisser did not return until some time in October and after Macfarlane left. We think from the evidence he is also mistaken as to the presence of Selig with Frank at the time the draft for the balance was given and conse- quently as to the conversation stated to have taken place in Selig's presence.

And now we come to a part of his testimony which satisfies us that neither his nor Henry Macfarlane's testimony is reliable. He says "It was arranged between Henry Fowler and myself in England that the matter of putting down the road, payments, etc., were to be left to my brother Henry and Neisser, and after road was paid for, it was to pass over to the plantation. Fowler who was out here and his uncle in London agreed to this arrange- ment." Now, as G. Macfarlane left at the date mentioned, deliv- ery must have commenced before this arrangement was made in England, and it was made by the Fowlers with their own agent who was not in a position to guarantee the account.

Neisser's conduct in concealing from his agents Grinbaum & Co. the alleged contract, although they were advancing sixty thousand dollars and carrying on the plantation, does prevent us from giving much credence to his testimony.

Again, G. W. Macfarlane says that the railroad was not included in their mortgage because it was Fowler's property and had not passed to the Heeia Plantation. This has been offered as tending to induce the Court to support the alleged contract, whereas it has an entirely opposite effect with us, as the mortgage was given in July, 1881, long before any negotiation was had respecting the railroad and consequently it could not have been included in the mortgage. It is an instance of loose and reckless statements being made without consideration.

Feeling as we do that this claim has not been proved, and that to allow it would be contrary to public policy and injurious to the rights of third parties, we have come to the conclusion that the

decree appealed from should be reversed and the petition and motion dismissed, with costs in this Court and in the Court below.

*F. M. Hatch,* for petitioner.

*A. S. Hartwell,* for respondents.

Aliiolani Hale, 29th July, 1885.